## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| Gary Phillips, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Cause No. 4: 11-CV-633-JTK |
| | § | |
| Michael J. Astrue, Commissioner, | § | |
| Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

### ORDER AFFIRMING THE COMMISSIONER'S DECISION

In this case, plaintiff-claimant Gary Phillips sought judicial review of defendant Commissioner Michael J. Astrue's denial of an application for supplemental security income (SSI).[1]  Phillips asked the Court to reverse the Commissioner's decision and remand his case to the Social Security Administration (SSA) for the award of benefits.[2] The undersigned has authority to resolve this case pursuant to the parties' consent to the jurisdiction of the magistrate judge.[3]  After considering the record, the arguments of the parties, and the applicable law, this Court affirms the Commissioner's decision.

**Scope of judicial review**.  In reviewing a decision denying an application for SSI, the reviewing court must determine whether substantial evidence supports the

---

[1]Docket entry # 2 (complaint); SSA record at p. 19 (unfavorable decision).

[2]Docket entry # 2, p. 2.

[3]*See* 28 U.S.C. § 636(c); docket entry # 4.

Commissioner's decision and whether the Commissioner made a legal error.[4]

Substantial evidence is more than a mere scintilla of evidence; it means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.[5]  In

determining whether substantial evidence supports the Commissioner's decision, the

court must consider evidence that detracts from the Commissioner's decision as well as

evidence that supports the decision, but the court may not reverse the Commissioner's

decision simply because substantial evidence supports a contrary decision.[6]

**The disputed issues in this appeal**.  The parties do not dispute that Phillips

exhausted his administrative remedies[7] or that the Commissioner's administrative law

---

[4]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (stating that the court's "review of the Commissioner's denial of benefits is limited to whether the decision is 'supported by substantial evidence in the record as a whole'"); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[5]*See Slusser*, 557 F.3d at 925.

[6]*See Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

[7]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

judge (ALJ) followed the required five-step process for determining whether a SSI claimant is disabled.[8]  Instead, the parties disagree about whether Phillips's mental impairment met a listed impairment.

**The Commissioner's decision**.  Phillips received SSI benefits as a child.  Phillips was abandoned by his biological parents and reared by his grandparents.  When he started kindergarten, school specialists evaluated Phillips for learning problems[9] and determined he needed special education services.[10]  Phillips's grandmother then applied for SSI on Phillips's behalf[11] and reported that "[t]hey say he is retarded and he is [hyperactive]."[12]

Philips was later evaluated by Dr. Stephen R. Harris, a psychologist and neurotherapist.[13]  Dr. Harris concluded that Phillips appeared "to be an individual in the mild range of retardation who shows some fluctuations due to attentional and

---

[8]*See* 20 C.F.R. § 416.920 (setting forth the five-step sequential evaluation process for determining whether a claimant is disabled and entitled to SSI).

[9]SSA record at p. 281.

[10]*Id*. at p. 301.

[11]*Id*. at p. 131.

[12]*Id*. at p. 235.

[13]*Id*. at p. 296.

concentration difficulties."[14]  Based on Dr. Harris's evaluation, the Commissioner

approved the application for SSI.[15]

Phillips received SSI until February 1, 2008.[16]  Prior to the cessation of benefits,

the Commissioner notified Phillips that he was no longer eligible for child benefits.[17]

Because Phillips was 18 years old, the adult eligibility rules applied.  Phillips sought SSI

benefits under the adult rules, but the Commissioner's administrative law judge (ALJ)

determined that Phillips was not disabled.

The ALJ determined that despite having a severe impairment—borderline

intellectual functioning[18]—Phillips had the residual functional capacity (RFC) to work at

all exertional levels, except that Phillips's ability to work was limited by functional

illiteracy and Phillips must work at jobs involving simple instructions and simple

tasks.[19]  Because a vocational expert identified jobs that a person with Phillips's RFC

could do, the ALJ concluded that Phillips was no longer disabled under the Social

---

[14]*Id*. at p. 297.

[15]*Id*. at p. 62 (determining disability began on Jan. 1, 1995).

[16]*Id*. at p. 57.

[17]*Id*. at p. 99.

[18]*Id*. at p. 21.

[19]*Id*. at p. 24.

Security Act.[20]  The ALJ's decision became the final decision of the Commissioner for the purpose of judicial review pursuant to 42 U.S.C. § 405(g).

**Substantial evidence supports the Commissioner's decision**.  Most of the documents in the record flowed from Phillips's childhood disability determinations. The documentation is relevant to the adult determination because Phillips maintains his mental impairment meets or equals a listing for mental retardation.  To meet a listing for mental retardation, there must be evidence of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22."[21]  The childhood-disability records document the onset of mental impairment before age 22.

Although the parties agree the onset of Phillips's impairment began before age 22, they disagree about whether Phillips met a listed impairment for mental retardation and whether the ALJ properly assessed Phillips's credibility.  Despite the disagreement, the following substantial evidence supports the ALJ's conclusion that Phillips was not disabled: (1) a report of physical examination, (2) the results of psychological testing, (3) evidence about attention deficit hyperactivity disorder (ADHD), and (4) vocational

---

[20]*Id*. at p. 28.

[21]20 C.F.R. pt. 404, subpt. P., app. 1., § 12.05.

expert testimony.

The physical examination.  Dr. James Simpson examined Phillips when he

was 17.[22]  Phillips reported having some blackouts when he got too hot, and having

problems with his back and knees,[23] but Dr. Simpson determined Phillips had no

limitations in his ability to walk, stand, sit, lift, carry, handle, finger, see, hear or speak.[24]

Dr. Simpson's report supports the ALJ's determination that Phillips could work at all

exertional levels because Dr. Simpson found no exertional limitations.[25]

Psychological testing.  At the conclusion of Phillips's hearing, the ALJ sent

Phillips for psychological testing.[26]  Dr. Kenneth Hobby, a psychologist, evaluated

Phillips on June 10, 2010—when Phillips was 20[27]—and on October 13, 2010—when

Phillips was 21.[28]  After the first evaluation, Dr. Hobby reported that Phillips did not

---

[22]SSA record at p. 562.  Dr. Simpson's report is the only evidence of Phillips's physical abilities.

[23]*Id*. at p. 562.

[24]*Id*. at p. 566.

[25]Phillips's attorney stipulated to the absence of exertional limitation.  *Id*. at p. 609.

[26]*Id*. at p. 613 (advising Phillips that he was sending Phillips for an evaluation and some testing, and encouraging Phillips "to try your best on them").

[27]*Id*. at p. 572.

[28]*Id*. at p. 582.

appear to function within or near the mentally retarded range.[29]

Dr. Hobby conducted intelligence testing during the second evaluation. Dr. Hobby reported that Phillips's scores were "typical of individuals who fall within the low normal to borderline intellectual range, and who have attention deficit problems."[30]  Phillips's lowest test score was "Working Memory, which fell in the upper mild intellectually handicapped range."[31]  Dr. Hobby opined that Phillips had "the intellectual ability to learn some simple repetitive semi-skilled work-like tasks," needed close supervision until he learned a task because he could not read, and could probably function well with minimum supervision after learning a task.[32]  Dr. Hobby diagnosed Phillips with attention deficit/hyperactivity disorder, a learning disorder not otherwise specified, and borderline intellectual functioning.[33]

Dr. Hobby's reports support the ALJ's decision because the ALJ determined that Phillips was impaired by borderline intellectual functioning.  The reports also support the determination that Phillips's mental impairment was severe because borderline intellectual functioning limits available jobs.  Borderline intellectual functioning, if

---

[29]*Id*. at p. 578.

[30]*Id*. at p. 590.

[31]*Id*. at p. 590.

[32]*Id*. at p. 590.

[33]*Id*. at p. 591.

supported by the record, is a significant nonexertional impairment that must be

considered by a vocational expert.[34]  In addition, the reports support the ALJ's

determination that Phillips can do jobs involving simple instructions and simple tasks

because that capacity is consistent with Dr. Hobby's findings.

     Evidence about ADHD.  As a child, Phillips was diagnosed with ADHD.  ADHD

is a developmental disorder that can continue through adolescence and adulthood.  In

considering ADHD, the ALJ determined that ADHD was a non-severe impairment.[35]

     People with ADHD may have difficulty staying focused, paying attention,

difficulty controlling behavior, and hyperactivity.[36]  In seeking adult benefits, Phillips

reported no problems in these areas other than needing reminders to take his

medication.[37]  At that time, Phillips was taking a psychotropic drug for ADHD.[38]

     A short time later, Dr. Don Birmingham, an agency psychologist, evaluated

Phillips and reported that Phillips's ADHD appeared "to be well-controlled via the

---

[34]*Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012); *Lucy v. Chater*, 113 F.3d 905, 908 (8th Cir. 1997).

[35]SSA record at p. 23.

[36]1 The Gale Encyclopedia of Med. 535-38 (4th ed.).

[37]SSA record at p. 152-59.

[38]*Id*. at p. 161.

medications."[39]  Phillips obtained his medication through Medicaid and Families Inc.—a

counseling agency.  The record suggests Phillips no longer received services from

Families Inc. after his child benefits ceased.

At the time of Dr. Hobby's examination, Phillips had been untreated for ADHD

for over two years.  Despite the lack of treatment, Dr Hobby observed no limitations in

the ability to attend to and sustain concentration on basic work-like tasks, although

problems were apparent on formal tasks.[40]  Dr. Hobby opined that Phillips should be

able to persist on appropriate skill level work-like tasks for at least part of an eight-hour

day.  Dr. Hobby reported that Phillips worked at a fairly normal and steady pace, a

pace appropriate for completing basic work-like tasks.

This evidence supports the ALJ's determination that ADHD was a non-severe

impairment because it showed ADHD did not significantly limit Phillips's mental ability

to do basic work activities,[41] in contrast to Phillips's intellectual functioning which

significantly limited his ability to work.  The medical evidence indicated Phillips's

childhood ADHD could be controlled by medication, but Dr. Hobby's report showed

that Phillips had the ability to attend to and sustain simple work-like tasks even without

---

[39]*Id*. at p. 374.

[40]*Id*. at p. 593.

[41]20 C.F.R. § 416.921(a) (explaining that an impairment is not severe if it does not
significantly limit the ability to do basic work activities).

medication.  The record indicates ADHD posed significant hurdles for Phillips as a child, but had little impact Phillips as an adult.

Vocational expert testimony.  The ALJ asked the vocational expert whether jobs existed for a person who could work at all exertional levels, but was limited by functional illiteracy and the need for jobs involving simple tasks and simple instructions.[42]  The vocational expert testified that such jobs existed at all exertional levels and provided examples of available jobs at the heavy and medium levels of exertion.[43]  About the heavy-level example, the vocational expert testified that 1,600 jobs exited in Arkansas and 180,000 existed nationwide.  About the medium-level example, the vocational expert testified that 3,700 jobs existed in Arkansas and 420,000 existed nationwide.[44]  This testimony supports the ALJ's determination that Phillips was not disabled because it shows jobs existed in significant numbers that Phillips could perform.

The foregoing evidence constituted more than a mere scintilla of evidence.  A reasonable mind would accept this evidence as adequate to support the conclusion that Phillips was not disabled.  For these reasons, the foregoing evidence constitutes

---

[42]SSA record at pp. 611-12.

[43]*Id*. at p. 612.

[44]*Id*.

substantial evidence.  Despite substantial evidence, Phillips maintains the ALJ erred on the law.

**The Commissioner's decision comports with applicable legal standards**.

<u>Whether Phillips met a listing for mental retardation</u>.  Phillips maintains his mental impairment met or medically equaled listings for mental retardation— specifically, listings 12.05B or 12.05C.  To meet listing 12.05B, a claimant must have a "valid verbal, performance, or full scale IQ of 59 or less."  To meet listing 12.05C, a claimant must have a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  Phillips argued that he met the listings because his childhood scores fell within the required ranges.  Phillips insisted the childhood scores control because the Eighth Circuit has recognized that mental retardation does not normally improve as a person ages and a person's IQ presumably remains stable.[45] Phillips maintains the ALJ erred by not accepting his childhood IQ scores.

The presumption of a stable IQ may be rebutted by "evidence of a change in a claimant's intellectual functioning."[46]  In this case, the record included evidence of a change in Phillips's intellectual functioning.  Dr. Stephen R. Harris reported that, at age

---

[45]*See Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001).

[46]*Muncy*, 247 F.3d at 734.

5, Phillips scored: 55 on verbal, 63 on performance, and 56 on full scale.[47]   Joan Jeffery, a school psychological examiner, reported that, at age 17, Phillips scored: 66 on verbal, 69 on performance, and 64 on full scale.[48] Dr. Birmingham reported that, at age 18, Phillips scored: 74 on verbal, 74 on performance, and 72 on full scale.[49] Dr. Hobby reported that, at age 21, Phillips scored: 71 on verbal, 81 on performance, and 74 on full scale.  The latter scores—Phillips's adult scores—are higher than the childhood scores.  The difference in scores evidences a change in intellectual functioning.

The ALJ relied on the adult scores in determining whether Phillips met or equaled a listing for mental retardation.  Those scores fell outside the range for either 12.05B or 12.05C.  Nothing in the record suggests the adult scores were invalid.  Instead, the record indicates the scores were valid because neither Dr. Birmingham nor Dr. Hobby observed evidence of exaggeration or malingering.[50]  In the absence of evidence undermining the validity of the adult scores, the ALJ properly relied on the adult scores in determining that Phillips's mental impairment did not meet a listing.  To the extent Phillips argued that the ALJ should have considered ADHD under listing

---

[47]*Id*. at p. 297.

[48]*Id*. at p. 571.

[49]*Id*. at p. 376.

[50]*Id*. at pp. 377 & 593.

12.05C as another mental impairment imposing an additional and significant work-related limitation of function, such consideration would make no difference without a valid verbal, performance, or full scale IQ of 60 through 70.  The ALJ did not err.

Phillips's credibility.  Phillips also challenges the ALJ's assessment of the credibility of his testimony, although he did not identify what aspects of his testimony should have been credited as true.  Ostensibly, he challenges testimony about why he could not work.  Phillips testified that he could not work because of problems with his knees and back, stress, and anger.[51]  The ALJ determined the statements were not credible to the extent they were inconsistent with the RFC determination.

"In assessing a claimant's credibility, an ALJ must consider all of the evidence related to the subjective complaints, the claimant's daily activities, observations of third parties, and the reports of treating and examining physicians."[52]  The ALJ's opinion discussed these matters in detail and identified inconsistencies in Phillips's statements throughout the disability-determination process.  For example, when Phillips applied for adult disability benefits, he reported no physical problems and getting along well

---

[51]SSA record at pp. 605-06, 608 & 610-11.

[52]*McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

13

with authority figures.[53]  His testimony was different.  A reviewing court "will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so."[54]  The inconsistency in earlier reports and testimony is a good reason.  The ALJ did not err in assessing Phillips's credibility.

**Conclusion**.  Having determined that substantial evidence supports the Commissioner's denial of Phillips's application, and the Commissioner made no legal error, the court DENIES Phillips's request for relief (docket entry # 2) and AFFIRMS the Commissioner's decision.

It is so ordered this 7th day of September, 2012.

_____
United States Magistrate Judge

---

[53]SSA record at p. 152.

[54]*Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (citation omitted).